UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH SOTO,

                Plaintiff,

v.

NORMAN MINETA,

                Defendant.

_____/

CIVIL ACTION NO. 01-71244

DISTRICT JUDGE ARTHUR J. TARNOW

MAGISTRATE JUDGE DONALD A. SCHEER

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION**:

I recommend that Plaintiff's Motion for Relief from Judgment be denied.

**II.**    **REPORT:**

    **A.**    **Procedural History**

The original Complaint in this action was filed on March 30, 2001. Defendant's Answer was filed August 6, 2001. On December 19, 2001, Plaintiff filed a Motion to Amend the Complaint. That motion was granted by an Order of the district judge on December 27, 2001. The First Amended Complaint was filed on that date. Defendant's Answer was filed March 5, 2002.

On April 8, 2002, the court held a Scheduling Conference and entered a Pre-Trial Scheduling Order. A lengthy period of discovery ensued. On November 7, 2002, a second Scheduling Conference was conducted, and a Second Pre-Trial Scheduling Order issued. On June 30, 2003, Defendant filed a Motion for Summary Judgment. Plaintiff countered with a Motion to Compel Production of Evidence, which was referred to the magistrate judge and denied on August 21, 2003. On September 5, 2003, Plaintiff filed a Second

Motion to Amend his Complaint. That motion was also referred to the magistrate judge for hearing and determination. Although a hearing was scheduled, the motion was withdrawn at the request of Plaintiff's counsel. Shortly thereafter, Plaintiff filed a Third Motion to Amend Complaint. That motion was, likewise, referred to the magistrate judge. Following a hearing on February 10, 2004, Plaintiff's Third Motion to Amend the Complaint was denied.

Despite aggressive efforts to amend the claims in this case, Plaintiff's former counsel did not respond to Defendant's Motion for Summary Judgment. On March 19, 2004, the district judge entered an Order acknowledging Plaintiff's failure to file a response and granting Defendant's motion. A Judgment Order dismissing the Complaint was issued on the same date and entered on March 25, 2004. (Docket Entry 52).

On March 21, 2005, Plaintiff's current counsel entered his appearance and filed the instant Motion to Vacate. Defendant's response to the motion was filed April 1, 2005, and amended on April 4, 2005. The Motion to Vacate was referred to the magistrate judge on September 16, 2005. The motion was brought on for hearing on December 7, 2005, and taken under advisement pending the submission of supplemental briefs. Those briefs were filed by Defendant on January 4, 2006, and by Plaintiff on January 17, 2006. Prior to a decision on the motion, action on the case was stayed by Order of the district judge on September 21, 2006, due to Plaintiff's pending petition in bankruptcy.

On March 21, 2007, Plaintiff filed a Motion to Reopen the Case. On June 11, 2007, the district judge referred that motion to the magistrate judge. The same Order recommitted to the magistrate judge the Plaintiff's earlier Motion to Vacate. On July 12, 2007, the motions were noticed for hearing on September 12, 2007. That hearing was

adjourned to October 11, 2007. On that date, Plaintiff's Motion to Reopen the Case was granted. The Motion to Vacate Judgment was taken under advisement pending the submission of supplemental briefs. Both parties submitted second supplemental briefs on October 31, 2007. Plaintiff's Response to Defendant's Second Supplemental Brief was filed on November 13, 2007.

## B. Applicable Law

Federal Rule of Civil Procedure 60 provides as follows:

**Relief from Judgment or Order**

**(a) Clerical Mistakes.** Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may also be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A

motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C. §1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

Fed.R.Civ.P. 60.

Plaintiff's Motion for Relief from Judgment is premised upon two sections of the Rule. He claims entitlement to relief from the judgment pursuant to Fed.R.Civ.P. 60(b)(1) on the theory that the district judge committed a substantive mistake of law in granting Defendant's Motion for Summary Judgment. Alternatively, Plaintiff relies upon Fed.R.Civ.P. 60(b)(6) on the ground that the judgment resulted from the egregious misconduct of his former counsel, and that such conduct constitutes a "reason justifying relief from the operation of the judgment."

**C.    Analysis**

**1.    Fed.R.Civ.P. 60(b)(1) Claim**

The first ground upon which Plaintiff seeks relief from the court's Judgment of March 19, 2004 is premised upon Fed.R.Civ.P. 60(b)(1). The Rule is intended to provide relief in only two situations: (1) when a party has made an excusable mistake or an attorney has acted without authority, or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order. United States v. Reyes, 307 F.3d 451, 455 (6th Cir. 2002). In this case, Plaintiff asserts the second ground. He observes, correctly, that the

Order granting the Motion for Summary Judgment contains no analysis, but merely notes Plaintiff's failure to file a response. Case law in this Circuit establishes that "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." Carver v. Bunch, 946 F.2d 451, 455 (6th Cir. 1991). Under Rule 56(c), the burden of demonstrating the absence of a genuine issue of material fact for trial always rests with the party moving for summary judgment. "More importantly for all purposes, the movant must always bear this initial burden regardless if an adverse party fails to respond." Id., at 545-55 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Kendall v. Hoover Co., 751 F.2d 171, 173-74 (6th Cir. 1984); Felix v. Young, 536 F.2d 1126, 1125 (6th Cir. 1976). "The trial court must intelligently and carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party." Guarino v. Brookfield Twp. Trustees, 980 F.2d 399, 407 (6th Cir. 1992). Because neither the Order granting Defendant's Motion for Summary Judgment nor the Judgment Order entered on the same date contains an analysis of the adequacy of Defendant's motion, I concur with Plaintiff that the Judgment was subject to relief under Fed.R.Civ.P. 60(b)(1).

Defendant does not challenge the proposition that the Judgment Order was deficient. Defendant argues instead that Plaintiff's Rule 60(b)(1) motion must be denied because (a) it is untimely, and (b) because Plaintiff has failed to show that he has a meritorious claim in opposition to the Motion for Summary Judgment.

Fed.R.Civ.P. 60(b) provides that a motion for relief from a judgment must be made "within a reasonable time," and "for reasons (1), . . . not more than one year after the judgment, order, or proceeding was entered or taken." In the case at bar, both the Order

Granting Defendant's Motion for Summary Judgment and the Judgment itself were granted

on March 19, 2004 and entered on March 24, 2004.  Accordingly, Defendant's motion, filed

362 days following the Clerk's entries, satisfies the one year limitation stated in the rule.

Our Circuit, however, imposes a more stringent time limitation on Rule 60(b)(1) motions

based on legal error.

> Rule 60 requires that a motion for relief from judgment be made within a reasonable time.
>
> &ast;   &ast;   &ast;
>
> There is authority for the view that the word "mistake" as used in Rule 60(b)(1) encompasses any type of mistake or error on the part of the court, including judicial mistake as to applicable law.
>
> &ast;   &ast;   &ast;
>
> Those courts which have found errors of law to be a ground for Rule 60(b)(1) relief, recognizing the effect their view has on Rule 59(e) and on finality of judgments, have considered carefully what is a "reasonable time" for seeking reconsideration of a point of law to the appeal period.  This court is persuaded that the better view is to allow reconsideration of a point of law under Rule 60(b)(1) when relief from judgment is sought within the normal time for taking an appeal.  This view serves the best interests of the judicial system by avoiding unnecessary appeals and allowing correction of legal error if and when made and the trial court has been satisfied that an error was committed.

Barrier v. Beaver, 712 F.2d 231, 234-35 (6th Cir. 1983) (internal citations omitted).  See

also, Pierce v. United Mine Workers of America Welfare and Retirement Fund, 770 F.2d

449 (6th Cir. 1985).  In the case at bar, Defendant correctly observes that the normal time

for taking an appeal of this court's Judgment was sixty days after the Judgment was

entered.  Fed.R.App.P 4(a)(1)(P).  As Plaintiff did not file his Rule 60 Motion until almost

one year following the entry of the Judgment, his Rule 60(b)(1) claim of legal error is untimely under the standard in this Circuit.

Plaintiff attempts to sidestep the 60 day time limitation by claiming that the cases relied upon by Defendant are distinguishable from the case *sub judice.* He maintains that the courts in <u>Barrier</u> and <u>Pierce</u> reached legally incorrect conclusions because they applied incorrect legal analysis to the facts. In this case, he asserts that the court applied <u>no</u> legal analysis at all, but simply granted the motion because of Plaintiff's failure to respond to it. I find the argument totally unpersuasive. In my view, any deficiency in this court's judgment stems from the application of a default analysis, rather than a summary judgment analysis. Accepting Plaintiff's argument that a default analysis was not appropriate under the circumstances of this case, I find the conclusion inescapable that the court made a substantive mistake of law. The "reasonable time" allowed for relief from such a mistake in this Circuit is 60 days. Had Plaintiff brought that error to the judge's attention within the time limit for appeal, appropriate corrective action could have been taken. Such a process is clearly contemplated by our Court of Appeals in establishing the sixty day limitation.

> This court is persuaded that the better view is to allow reconsideration of a point of law under Rule 60(b)(1) when relief from judgment is sought within the normal time for taking an appeal. This view serves the best interests of the judicial system by avoiding unnecessary appeals and allowing correction of legal error if an when made and the trial court has been satisfied that an error was committed.

<u>Barrier</u>, 712 F.2d at 234-35. I am satisfied that Plaintiff's claim for relief from Judgment under Fed.R.Civ.P. 60(b)(1) is untimely.

Defendant opposes Plaintiff's Fed.R.Civ.P. 60(b)(1) claim on a second ground. Our Circuit Court of Appeals has held that a party seeking relief from a judgment under that

section must demonstrate both the existence of mistake, inadvertence, surprise or excusable neglect and must further demonstrate that he has a meritorious claim or defense. Marshall v. Monroe and Sons, Inc., 615 F.2d 1156, 1160 (6th Cir. 1980). Defendant acknowledges that a party moving for summary judgment pursuant to Fed.R.Civ.P. 56 bears the initial burden of informing the court of the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. Cellotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Defendant contends that "[t]his burden can be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." Barnhart v. Pickrel, Schaeffer and Ebeling Co., L.P.A., 12 F.3d 1382 (6th Cir. 1993). The Secretary emphasizes that his motion was supported by numerous exhibits, including excerpts from the testimony of Plaintiff and at least fifteen witnesses, and by a memorandum explaining his positions on the law of the case. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his burden of proof, Defendant contends that the granting of a summary judgment is proper. Cellotex, 477 U.S. at 322. It is undisputed that the Plaintiff in the case at bar has not responded to Defendant's Motion for Summary Judgment. It is also clear that no showing of a meritorious claim in opposition to Defendant's Motion for Summary Judgment was made by Plaintiff in his Rule 60(b)(1) motion.

Plaintiff Soto counters the Defendant's argument by observing that the instant case is distinguishable on its facts from the Marshall case. In Marshall, the respondent was effectively defaulted when it failed to respond to a Complaint filed against it before the Occupational Safety and Health Review Commission. In deciding that the respondent was

required to demonstrate a meritorious defense, the court in <u>Marshall</u> relied upon cases from this and other circuits, all involving default judgments. Soto correctly notes that the instant case involves a grant of summary judgment. He cites <u>Cacevic v. City of Hazel Park</u>, 226 F.3d 483 (6th Cir. 2000) for the proposition that a review of the merits of a summary judgment decision is not to be considered for purposes of evaluating the propriety of a Rule 60(b) denial. While Plaintiff accurately states the proposition, it is clear that the Court of Appeals, in <u>Cacevic</u>, was referring to its own standard of review of such a denial on appeal, and not to the standard to be applied by a district court in deciding a motion under Rule 60(b)(1). The question to be answered by this court is whether Plaintiff has met the requisite burden of establishing his entitlement to the relief sought. The <u>Marshall</u> decision plainly states that "[i]n order to be eligible for relief under 60(b)(1) the movant must demonstrate the following: (1) the existence of mistake, inadvertence, surprise, or excusable neglect; (2) that he has a meritorious defense." 615 F.2d at 1160. While it is true that <u>Marshall</u> dealt with a challenge to a default judgment, nothing in the decision suggests that a different standard applies in a summary judgment situation. Nor do the commentators make such a distinction. "A precondition of relief from a judgment is that the movant show that he or she has a meritorious claim or defense. The moving party must convince the court 'that vacating the judgment will not be an empty exercise.'" <u>Moore</u>, *Federal Practice 3d*, §60.24. The sole exception to the requirement is a challenge to a void judgment. <u>Id</u>. A judgment is void only if it is totally beyond a court's power to render. <u>Kalb v. Feurenstein</u>, 308 U.S. 435, 438, 60 S.Ct. 343, 84 L.Ed. 370 (1940).

> The cases show that although the courts have sought to accomplish justice, they have administered Rule 60(b) with a scrupulous regard for the aims of finality. Thus they have held

that the motion must be made within a 'reasonable time,' even though the stated time limit has not expired.  They have been unyielding in requiring that a party show good reason for the failure to take appropriate action sooner.  <u>They have prevented the needless protraction of litigation by requiring the moving party to show a good claim or defense.</u>

*          *          *

<u>Relief will not be given if substantial rights of the moving party have not been harmed by the judgment.</u>

*          *          *

Wright, Miller and Kane, *Federal Practice and Procedure: Civil 2d* §2857 (emphasis added).

Plaintiff's Motion for Relief from Judgment does not assert that the Defendant failed to carry his burden under Fed.R.Civ.P. 56.  In the absence of some showing that a genuine issue exists as to any material fact, a court confronted with a Rule 60 motion challenging a summary judgment has no practical way of determining that vacating the judgment will not be an empty exercise.  Finally, while Plaintiff is correct in observing that the majority of Rule 60 cases deal with default judgments, many courts have required Rule 60(b) movants to establish a meritorious claim or defense in challenging summary judgments as well.  See <u>Garth v. Univ. of Kentucky</u>, 966 F.2d 1452 (6th Cir. 1992) (Table), 1992 WL 133050; <u>Teamsters, Chauffeurs, Warehousemen and Helpers Union Local 59 v. Superline Transportation Company, Inc.</u>, 953 F.2d 17 (1st Cir. 1992); <u>Doebele v. Sprint Corp.</u>, 168 F.Supp. 2nd 1247 (D. Kan. 2001); <u>United Overseas Bank v. Marchand</u>, 1996 WL 695902 (S.D. N.Y.) (unreported).  The First Circuit Court of Appeals, in <u>Superline</u>, emphasized that "a litigant, as a precondition to relief under Rule 60(b), must give the trial court reason to believe that vacating the judgment will not be an empty exercise."  953 F.2d at 20.  Our own circuit is in accord with that view.  In <u>Garth v. Univ. of Kentucky</u>, the plaintiff failed to

respond to a motion for summary judgment, and the motion was granted. In a subsequent Rule 60(b) motion, the plaintiff again "failed to show with specificity that a genuine issue existed for trial." The Sixth Circuit affirmed the trial court's denial of the motion for relief from judgment. 966 F.2d 1452 (Table), 1992 WL 133050.

In a further attempt to justify his failure to establish an arguably meritorious claim in support of his Rule 60 motion, Defendant asserts that the motion was filed shortly after he retained his present counsel, and that, to that point, substitute counsel had been unable to obtain files from Mr. Soto's original attorney. On that basis, Plaintiff claimed in his Reply Brief of April 11, 2005 that he should be allowed additional time to prepare a response to the Motion for Summary Judgment. Plaintiff's current counsel acknowledges, however, that Defendant provided him with copies of the exhibits to the Motion for Summary Judgment in February 2005, and that numerous large boxes of documents were produced to Plaintiff by his former counsel during the summer of 2005. (Plaintiff's Brief, Page 16; Statement of Michael A. Mixer, dated November 9, 2007, Paragraph 11). He has filed three written submissions in connection with the instant motion since that time. Plaintiff's Motion for Relief from Judgment was initially heard on December 7, 2005, and reheard on July 25, 2007 long after he and his new counsel had access to his file.[1] At neither hearing did Plaintiff make a showing of an arguably meritorious defense to the Motion for Summary Judgment. In fact, at the more recent hearing, Plaintiff's current counsel, in reliance upon Cacevic v. City of Hazel Park, contended that it would be "improper" for the court to require

---

[1] At the October 11, 2007 hearing, Plaintiff's current counsel even offered to supply defense counsel with copies of documents which Defendant asserts were discarded following the entry of judgment.

a showing of a meritorious defense. That view is inconsistent with the authorities cited above.

I am persuaded that Plaintiff is required to demonstrate an arguably meritorious claim in order to secure relief under Fed.R.Civ.P. 60(b)(1). He has failed to do so, and I conclude that his Rule 60(b)(1) motion must be denied.

## 2.      Fed.R.Civ.P. 60(b)(6) Claim

Fed.R.Civ.P. 60(b)(6) provides that a court may relieve a party from a judgment for: "(6) any other reason justifying relief from the operation of the judgment." The rule does not explicitly define the circumstances which might authorize such relief, but its application has been found to be "appropriate to accomplish justice in an extraordinary situation . . .." Overbee v. VanWaters and Rodgers, 765 F.2d 578, 580 (6th Cir. 1985). The rule may be employed in "unusual and extreme situations where principles of equity demand relief." Olle v. The Henry and Wright Corp., 910 F.2d 357, 365 (1990). A motion under Rule 60(b)(6) must be filed within a "reasonable time," and is not subject to the one year limitation applied to claims for relief under Rule 60(b)(1), (2) and (3). Id., at 365.

In the instant case, Plaintiff seeks Rule 60(b)(6) relief on the grounds that his counsel: (a) failed to inform him that a Motion for Summary Judgment had been filed; (b) failed to respond to the motion; (c) failed to inform him that the motion had been granted; (d) repeatedly assured Plaintiff that the case was proceeding smoothly; and (e) told him that this case and Case No. 04-70966 would be tried together in late 2004. (Plaintiff's Brief, Page 8).

As a general rule, a party to litigation is deemed bound by the acts of his lawyer-agent, and is considered to have notice of all matters of which his attorney can be charged

with notice. Dismissal of a claim because of counsel's unexcused conduct does not impose an unjust penalty upon a party who voluntarily chose the attorney. If a lawyer's conduct is unreasonable in a given set of circumstances, the client's remedy is a malpractice action against the attorney. Link v. Wabash Railroad Co., 370 U.S. 626, 82 S.Ct. 1386 (1962).

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot not avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

Id., at 633-34 (citing Smith v. Ayer, 101 U.S. 320, 326, 25 L.Ed. 955 (1879). The Court reaffirmed this principle as recently as 1993. See Pioneer Investments Services v. Brunswick Associates, Ltd., 507 U.S. 380, 397, 113 S.Ct. 1489 (1993). Based upon the Supreme Court decisions, the U.S. Court of Appeals for the Sixth Circuit has determined that "an attorney's inexcusable neglect is normally attributed to his client." Allen v. Murphy, 194 F.3d 722, 723 (6th Cir. 1999).

Plaintiff correctly maintains that case law from this and other circuits establishes that a court may exercise its discretion to grant relief under Fed.R.Civ.P. 60(b)(6) to protect a party "from the harsh penalty of dismissal where the dismissal is the result of the egregious conduct of the party's attorney." (Plaintiff's Brief, Page 10). Thus, courts have found that "justice . . . demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings." United States

13

v. Moradi, 673 F.2d 725, 728 (4th Cir. 1982). Similarly, relief may be granted where such "egregious conduct amounted to nothing short of leaving his client's unrepresented." Boughner v. Secretary of HEW, 572 F.2d 976, 977 (3rd Cir. 1978). In Boughner, the court found an absence of neglect by the moving parties. Plaintiff also cites Community Dental Services v. Tani, 282 F.3d 1164 (9th Cir. 2002) in which the court observed that "the circuits that have distinguished negligence from gross negligence in the present context have granted relief to the client where the default judgment was the result of his counsel's displaying 'neglect so gross that it is inexcusable'". 282 F.3d at 1168. The court noted that Rule 60(b)(6) relief is "intended to encompass errors or actions beyond the [movant's] control." 282 F.3d at 1170, n.12. It found that conduct on the part of an attorney which results in the client receiving "practically no representation at all" constitutes gross negligence which will vitiate the agency relationship that "underlies our general policy of attributing to the client the acts of his attorney." 282 F.2d at 1171.

Plaintiff relies principally upon two Sixth Circuit cases. In Fuller v. Quire, 916 F.2d 358 (6th Cir. 1990), the court considered an appeal from an order granting a Rule 60(b) motion for relief from a dismissal based on the failure of a party's attorney to appear at a docket call. The district judge found that the court was distant from the client's residence; that the client had repeatedly attempted to secure information about his case; and that there was no showing of undue prejudice to the opposing party. The client was a long haul truck driver who could only inquire sporadically, but called his attorney "every few weeks" without success. When he finally contacted the attorney, Quire, he was told that his case had been dismissed; that there was likely nothing that could be done about it; that the

attorney was "sorry" and that the client should sue him.  Based upon that record, the Court of Appeals affirmed the grant of relief.

In <u>Valvoline v. Autocare Associates, Inc.</u>, 173 F.3d 857 (6th Cir. 1999), 1999 WL 98590 the trial court denied a Rule 60(b) motion to set aside a default judgment entered following an oral motion to strike the defendant's answer based on the failure of his attorney to appear at a pretrial conference.  On appeal, the court found that defendant's attorney had failed: (1) to file a Rule 26(f) report; (2) to appear at various noticed depositions; (3) to timely file a response to plaintiff's motion for summary judgment; and (4) to file a pretrial conference compliance pleading.  The court further found that the attorney had: (5) lied to the client in stating that he was negotiating a settlement; (6) defrauded the client by inducing the payment of $20,000 to the attorney as a show of "good faith" in consummating the settlement agreement; (7) lied to the client in stating that a settlement had been reached;  (8) checked himself in to a mental hospital, only to leave on the eve of an arraignment in Georgia on charges relating to similar thefts from other clients; and (9) was charged with multiple crimes of fraud against other clients.  On that undisputed record, the Sixth Circuit found that the attorney was "grossly negligent" and that the client was "not negligent".  The court specifically found that the record was "void of any evidence that the defendant was derelict in defending the underlying action," and that it was "clear that the blame rests entirely with [the attorney] who allegedly suffer[ed] from a mental disorder." On that record, the court reversed the district judge's denial of Rule 60(b) relief.[2]

_____

[2]  It is important to note that the district court's denial of relief was reversed only after the court applied the criteria for Rule 60(b)(6) relief established in <u>United Coin Meter Co. v. Seaboard Coastline Railroad</u>, 705 F.2d 839 (6th Cir. 1983).  The court considered: (1) whether the opposing party would be prejudiced; (2) whether the

The purpose of Fed.R.Civ.P. 60 "is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." Boughner v. Secretary of HEW, 572 F.2d 976, 977 (6th Cir. 1978). A motion brought pursuant to Rule 60 is addressed to the sound discretion of the court, and is reviewable on appeal only for an abuse of discretion. Id. The party seeking relief under the rule bears the burden of showing that, absent such relief, an extreme and unexpected hardship will result. Id.

Plaintiff's Rule 60(b) motion was supported by his own affidavit, dated March 21, 2005. Mr. Soto was represented in the instant case, and in case number 04-70966 by attorney Kathleen Kubicki. He admits that he was aware that Kubicki was attempting to amend the Complaint, but avers that she never told him that the Second Motion to Amend had been abandoned or that the Third Motion to Amend had been denied. He further asserts that Kubicki failed to tell him that Defendant's Motion for Summary Judgment had been filed; that she had failed to respond to the motion; and that the motion had been granted. He claims that Kubicki assured him that his cases were proceeding, and that both would be tried together in late 2004. (Soto Affidavit, Paragraphs 1-9).

The balance of Soto's initial affidavit describes numerous attempts on his part to contact Kubicki during the later part of 2004 and in January 2005, by telephone, regular mail, registered mail and personal visitations. All of his claimed efforts to contact her directly were unsuccessful. On January 5, 2005, Plaintiff called the chambers of the district

_____

defendant had a meritorious defense; and (3) whether culpable conduct of the defendant led to the default. 199 WL 98590 at *3 (citing United Coin Meter, 705 F.2d at 844-45).

16

judge to determine the status of his case. He states that he was told Kubicki had not attended a pretrial conference, and that an Order to Show Cause had been issued. Soto's affidavit further avers that, on January 6, 2005, he first discovered (through PACER) that the instant case had been dismissed on March 19, 2004 due to Kubicki's failure to respond to a Motion for Summary Judgment. Based upon Plaintiff's foregoing factual representations, he maintains in his Fed.R.Civ.P. 60(b)(6) claim that the dismissal of his case was due "solely to the misconduct of his attorney" (Kubicki). (Plaintiff's Brief, Page 16).

In his Amended Response to Plaintiff's Motion for Relief from Judgment, Defendant maintained that Plaintiff had failed to demonstrate the exceptional and extraordinary circumstances necessary to relief under Fed.R.Civ.P. 60(b)(6). He characterized Kubicki's failure to respond to his Motion for Summary Judgment as a litigation strategy, arguing that Kubicki "elected" not to respond to the motion, and that she engaged in a series of delay tactics in an effort to stall the summary judgment process. Those tactics included the filing of a Motion to Compel Discovery, and two Motions to Amend the Complaint. Defendant correctly observed that, in the Sixth Circuit, clients are held accountable for the acts and omissions of their chosen attorneys, even when those actions are inexcusably negligent. Pioneer Investment Services Company v. Brunswick Associates Ltd., 507 U.S. 380, 397, 113 S.Ct. 1489 (1993); Allen v. Murphy, 194 F.3d 722, 723 (6th Cir. 1999). Defendant posited that Plaintiff's avenue of relief for misconduct or gross negligence on the part of Kubicki lies in a malpractice action against her. See Link v. Wabash Railroad Co., 370 U.S. 626, 633-34, n.10 (1962).

Defendant also challenged the assertions in Soto's Affidavit.  Attached to Defendant's brief were copies of correspondence issued by Kubicki in connection with Plaintiff's cases between July 28, 2003 and May 13, 2004.  The letters make reference to Kubicki's Motion to Compel Discovery and both (i.e., 2nd and 3rd) Motions to Amend the Complaint.  (Defendant's Amended Response, Exhibits 1-3, 5, 6).  Each letter bears a notation indicating that a copy was sent to Mr. Soto.  Exhibit 4 to the Defendant's Brief is a copy of a November 24, 2003 letter from EEOC Administrative Law Judge Deborah M. Barno to Ms. Kubicki.  That letter also contains references to a Motion to Amend Soto's Complaint in federal court, and indicates that a copy was forwarded to Plaintiff.

In an Affidavit attached to his Reply Brief of April 11, 2005, Soto admitted receipt of a copy of Judge Barno's letter, as well as a voicemail message from Kubicki regarding the ALJ's criticism of her conduct.  Soto denied, however, any knowledge of the Kubicki letters.  (Reply Brief, Soto Affidavit dated April 11, 2005).  Plaintiff's counsel disparages Defendant's Exhibits as flimsy evidence of misstatements by Soto in his earlier Affidavit.

As Exhibit 1 to his Supplemental Brief of October 31, 2007, Defendant submitted the sworn Declaration of Kathleen Kubicki, dated October 12, 2007.  Ms. Kubicki declared that it is her standard practice to send copies of all written correspondence to her clients.  She stated that she was initially involved in the representation of Mr. Soto in connection with his administrative complaints against Defendant before the Equal Employment Opportunity Commission.  She asserted that she was in telephonic contact with her client on a regular basis, that she promptly returned his calls, and that she contacted Soto whenever she was involved in a telephonic discussion of his case with either the agency or government counsel.

Kubicki stated that she understood it to be her role to attempt to settle Mr. Soto's cases. She and Plaintiff had no written retainer agreement, and Soto did not provide compensation for her work on his behalf. When the EEOC did not schedule Mr. Soto's discrimination complaints as promptly as he wished, he directed Kubicki to file a civil lawsuit. She did not support that decision, and asked Soto to retain another attorney because she did not wish to litigate his Complaints in the United States District Court. Kubicki stated that, in September or October of 2003, upon receipt of the MSPB decision regarding Mr. Soto's demotion and charges of discrimination, she had a long discussion with Plaintiff and strongly recommended that he attempt to find some resolution to his Complaints without a trial. During that discussion, she "explained to him that [she] could not represent him in the matter because of irreconcilable differences regarding the litigation." She again told Soto that she would not litigate the case in U.S. District Court, and that he needed to have an attorney because she was no longer going to work on it. Kubicki professed her belief that Plaintiff was searching for an attorney, and stated that she filed the Motion to Amend the Complaint so that she could add additional charges. Kubicki maintained that she was in contact with Mr. Soto telephonically in order to keep him advised of the progress in the district court, and that Plaintiff knew he had to retain an attorney to represent him.

Kubicki's affidavit stated that, following denial of her Motion to Amend the Complaint, in February 2004, Soto had still not retained an attorney. She again told him that he needed to bring an attorney on the case because she was not willing to represent him. She declared that "[h]e knew clearly that [Kubicki] was only filing pleadings until he hired an attorney." She stated that Soto continued to file administrative complaints of discrimination,

and that she filed a second Complaint on Plaintiff's behalf in March 2004 "to keep [Plaintiff's] claims 'alive,'" but made it clear to him that she would not litigate the case in court.

Kubicki stated that Soto was "very aware" of the discrimination complaint process from prior involvement in the system. Kubicki declared that "[a]t no time did [she] mislead Mr. Soto regarding his federal court litigation." Each time she received filings or correspondence, she ensured that he received a copy. She denied any statement or action that would cause Mr. Soto to delay his search for an attorney to represent him, and stated that she did not bill him for her services so that he would have the money to pay an attorney. Finally, Kubicki declared that, after being notified that Soto had retained counsel, she "boxed up all of his records and sent them to him via federal express ground or UPS." Kubicki paid for the shipment of the records and did not seek reimbursement.

Plaintiff also filed a Second Supplemental Brief on October 31, 2007.[3] The Brief included a second Affidavit of Joseph A. Soto, dated October 31, 2007 in which he declared that, during the time he was represented by Kubicki, "it was not unusual for long periods of time to elapse with no communication from her." Plaintiff stated that, during November and December 2004, he became concerned that he had not heard from Kubicki since late September. Soto averred that he repeatedly tried to reach Kubicki by phone and fax, without success. On December 14, 2004, he telephoned Kubicki but was unable to contact her. On the same date, he issued by certified mail a written request that Kubicki contact him. The letter was returned unclaimed in January 2005. Soto wrote a second letter to

---

[3] The supplemental briefs of both parties were submitted at the court's request.

Kubicki on December 27, 2004, and attempted repeatedly to fax it, again without success. On January 5, 2005, Plaintiff called the court and learned that an Order to Show Cause had been entered in October 2004.

Soto stated that he wrote yet another letter to Ms. Kubicki on January 5, 2005. The letter was sent by Express Mail and Priority Mail, and neither copy was returned to Plaintiff. On January 13, 2005, Plaintiff issued a two page letter terminating Kubicki's services. That letter was sent by Certified Mail, and was eventually returned with the endorsement "attempted delivery, no response." Soto stated that he received no further communication from Kubicki until May or June 2005, at which time he began receiving boxes of documents. (Plaintiff's Second Supplemental Brief, Exhibit 1). Also attached to the Plaintiff's Second Supplemental Brief are copies of telephone records, the letters described in the Affidavit and postal records relating to the mailings.

On November 13, 2007, Plaintiff filed his Response to Defendant's Second Supplemental Brief. In a third sworn statement, dated November 9, 2007, Soto disputed the statements made in Kubicki's Affidavit. He denied that Kubicki ever told him that she did not intend to represent him in the district court litigation, and that she told him he needed to hire a new attorney. He averred that Kubicki never told him that she was only filing pleadings until he hired new counsel. He disputed Kubicki's statement that she copied him on all correspondence and filings. He denied receiving notice that the case had been dismissed, or that several counts in Case No. 04-70966 had been dismissed. He denied receiving notice of the October 2005 scheduling conference or the Order to Show Cause in Case 04-70966. Soto claimed that he did not pay Kubicki because they both expected she would be paid upon successful conclusion of his cases. Plaintiff claimed that,

had Kubicki told him she did not intend to represent him in the court proceedings, he would have immediately taken steps to retain new counsel, and would not have waited more than three years to do so.

Also attached to Plaintiff's Response to Defendant's Second Supplemental Brief is a sworn statement by Soto's current counsel. Mr. Mixer stated that, between January and June, 2005, he made numerous attempts to contact Kubicki by mail and telephone regarding Mr. Soto's representation. His efforts included a January 18, 2005 certified letter informing Kubicki that he had been retained by Plaintiff and instructing her to take no further action in his behalf. The letter also requested that Kubicki contact Mr. Mixer to immediately arrange for the transfer of Mr. Soto's file. Having received no response to that communication, Mixer attempted to telephone Kubicki on March 18, 2005. The call was answered by a woman who identified herself as Kubicki's sister, who informed Mixer that Kubicki was not well. On March 22, 2005, Mixer served Kubicki with a copy of Plaintiff's Motion for Relief from Judgment. On April 14, 2005, Mixer again called Kubicki's listed telephone number. The call was answered by a woman who asked if she could call him back. No return call was received. On April 15, 2005, Mixer filed a Motion to Substitute as Counsel for Plaintiff, and served a copy upon Kubicki. On June 3, 2005, Mixer spoke by telephone to Kubicki's sister, and explained that the magistrate judge had entered an Order for Substitution of Counsel, and had directed Kubicki to surrender Soto's records. A copy of the Order for Substitution was served on Kubicki by Mixer on June 7, 2005. Finally, Mr. Mixer averred that, throughout June, July and August, 2005, Soto received numerous large boxes of documents.

If the court were to accept Soto's accusations against his former attorney at face value, it would be easy to assume that Kubicki's performance was deficient. The failure to respond to a dispositive motion is inconsistent with standard civil procedure, and any competent practitioner of the law would recognize the risk inherent in such a course. But Plaintiff bears the burden of establishing his right to Rule 60(b) relief. He is not entitled to the <u>assumption</u> that his former attorney's failure to respond to Defendant's Motion for Summary Judgment deprived him of meritorious claims. Rather, it was his obligation on the instant motion to demonstrate that he had meritorious claims which would likely have withstood Defendant's motion, but for the neglect of his attorney. In the absence of such a showing, there is no real basis upon which to conclude that Kubicki's attempts to evade summary judgment and prolong Plaintiff's case by enlarging the Complaint (in the hope of a global settlement) was harmful - to say nothing of extraordinarily negligent and egregious. If Soto had no valid defense to Defendant's motion, i.e. no "genuine issue as to any material fact," Kubicki could not have defeated the motion in any event. That is precisely why a showing of a meritorious claim or defense is an essential element of a Rule 60(b)(6) claim. Unfortunately, this Plaintiff has disavowed that element. (See discussion at pp. 10-12, 32-33).

Even a finding that Kubicki's failure to respond amounted to malpractice, however, will not, in itself, warrant relief under Rule 60(b). The Supreme Court's decisions in <u>Link v. Wabash Railroad Co</u>. and <u>Pioneer Investment Services v. Brunswick Associates Ltd.</u>, plainly declare that the remedy for attorney conduct falling substantially below what is reasonable under the circumstances is an action against the attorney for malpractice. Having voluntarily chosen his attorney, a client cannot avoid the consequences of the acts

or omissions of his freely selected agent. "Any other notion would be wholly inconsistent with out system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" Link, 370 U.S. 626, 644 (1962).

The gravamen of Plaintiff's Rule 60(b)(6) claim is that a court may exercise broad discretion to relieve a party from the harsh penalty of dismissal "where the dismissal is the result of the egregious misconduct of the party's attorney." (Plaintiff's Brief, Page 10). The cases cited by Soto appear, in the main, to meet that demanding standard. In Boughner v. Secretary of HEW, 572 F.2d 976 (3rd Cir. 1979), the Third Circuit considered five consolidated appeals in which the same attorney had failed to respond to summary judgment motions. The attorney had been involved in a successful political campaign, had lost his secretary, and had failed to respond to summary judgment motions in a total of 52 cases.

In Community Dental Services v. Tani, 282 F.3d 1164 (9th Cir. 2002), the defendant's attorney filed an answer two weeks late, failed to serve the answer on the plaintiff, disobeyed a court order directing him to serve the answer and contact plaintiff's counsel to discuss settlement, and failed to respond to a motion for default judgment, all the while assuring his client that the case was proceeding smoothly. The Court of Appeals for the Ninth Circuit determined that the lawyer's conduct exceeded mere negligence and resulted in the client receiving practical no representation at all.

In Fuller v. Quire, 916 F.2d 358 (6th Cir. 1990), a lawyer's failure to appear at a "docket call" resulted in a dismissal of his client's case for lack of prosecution. The client, whose job as a long haul truck driver permitted only sporadic inquiries, attempted to contact

the attorney every few weeks, but his calls and letters were unavailing. At times, he was told that the attorney was attending to his farming business. When the attorney was finally reached by telephone early on a Sunday morning, he informed the client that the lawsuit had been dismissed, that there was nothing that could be done about it, that he (the lawyer) was under pressure, that he was sorry and that the plaintiff should sue him. In upholding the trial court's grant of Rule 60 relief, the Circuit Court emphasized the client's attentiveness, the distance between his home and the suit, and the absence of any showing of undue prejudice to the defendant in granting relief.

In <u>Valvoline v. Auto Care Associates</u>, 173 F.3d 857 (6th Cir. 1999) (Table), 1999 WL98590, the attorney failed to file a Rule 26(f) report; to appear at various noticed depositions; to respond in a timely fashion to plaintiff's motion for summary judgment and to file a pretrial conference compliance pleading. In addition, the attorney falsely told the client that he was negotiating a settlement, actively defrauded the client of $20,000.00 by representing that such payment was necessary to conclude the settlement, converted those funds to his own use, falsely told the client that the settlement had been accomplished and was prosecuted for similar fraudulent treatment of other clients. In reversing the trial court's denial of Rule 60 relief, our Circuit Court not only found the attorney to have been grossly negligent, but specifically determined that the client was not negligent.

I find that the instant case is distinguishable from Plaintiff's cited cases. Kubicki's conduct, even if substandard, involved no criminal conduct and no subordination of her client's interests for her own benefit. Nor does Plaintiff demonstrate any intentional abandonment or sabotage of his case by Kubicki. On the contrary, the record reflects that

25

substantial administrative and discovery efforts were expended by her on Soto's behalf, all without payment. It also appears that she made repeated efforts to negotiate a settlement. Even if her failure to respond to Defendant's Motion for Summary Judgment was negligent and blameworthy, it is apparent that she made affirmative efforts to keep Plaintiff's claims before the court. Those efforts included the filing of a Motion to Compel Discovery and two Motions to Amend Complaint. Kubicki's sworn declaration confirms that her efforts to amend represented an attempt to keep Plaintiff's claims "alive," with a view to concluding a broad based settlement. Even if Kubicki's representation of the Plaintiff was negligent, I conclude that it does not constitute the type of egregious and extraordinary conduct which would warrant Rule 60(b)(6) relief.

My conclusion is buttressed by the fact that all of the cases cited by Plaintiff involve undisputed facts demonstrating egregious conduct. In the instant case, Kubicki directly contradicts Plaintiff's claim that she neglected to communicate with him about salient aspects of his cases, or that she affirmatively misrepresented the status of his claims. In the course of the supplemental briefing process, Defendant has produced dozens of written communications issued by Kubicki to defense counsel on Soto's behalf between January 2003 and May 2004.[4] In every instance, the communications reflect that a copy was produced to the client. Soto's denial of receipt of particular letters, which would have tended to put him on notice of the state of his cases is unpersuasive. Not only does Kubicki directly dispute his declarations, but the inclusion of the client as a copy recipient

---

[4] Of course, Defendant would not have access to letters issued by Kubicki directly to her client. Any such letters would be in addition to the approximately 48 examples reflecting Soto as a copy recipient.

of correspondence is essentially universal on the part of practicing attorneys. I am further influenced by Plaintiff's substantial experience in filing employment related discrimination claims. If, as he stated in his October 31, 2007 affidavit, he tolerated long periods of time without communication from Kubicki, he may well share responsibility for the damage caused by her deficient representation. Plaintiff emphasized his efforts to reach his attorney late in 2004 and in January 2005. But those efforts came long after the order granting summary judgment to Defendant. Soto's declarations also demonstrate his ability to independently access the court record directly through the PACER system and calls to the district judge's chambers. Viewing the record in its entirety, I conclude that Plaintiff seeks Rule 60(b)(6) relief based on his attorney's tactical choice to avoid responding to the Defendant's Motion for Summary Judgment by expanding the scope of the lawsuit with new claims, in the hope of effecting a comprehensive settlement. Kubicki's sworn declaration confirms that tactical decision.[5] Plaintiff's chosen representative elected to pursue a dangerous tactic in an effort to improve her client's prospect for a settlement. It was probably a poor decision, and perhaps was malpractice. It was not, in my view, the type of extraordinary and egregious behavior that would warrant relief from its consequences under Fed.R.Civ.P. 60(b)(6).

Even if this court were to determine that Kubicki's performance as Plaintiff's attorney was grossly and egregiously deficient to the point of denying Soto any meaningful representation, the analysis would not end. As observed by the Sixth Circuit in <u>Valvoline</u>,

---

[5] The tactical nature of Kubicki's 2nd and 3rd attempts to amend the Complaint was apparent long before her sworn statement confirmed it. See Case No. 04-70996, Report and Recommendation dated September 26, 2005, Page 11.

such a finding would simply advance the analysis to consideration of whether (1) Defendant would be prejudiced by Rule 60(b)(2) relief, (2) whether Plaintiff has a meritorious defense to Defendant's Summary Judgment Motion, and (3) whether culpable conduct of the Plaintiff contributed to the Judgment.  <u>Valvoline v. Autocare Associates, Inc.</u>, 173 F.3d 857 (Table), 1999 WL 98590 (6th Cir.), *4; <u>United Coin Meter Company, Inc. v. Seaboard Coastline Railroad</u>, 705 F.2d 839 (6th Cir. 1983).

### a.    <u>Prejudice to Defendant</u>

Counsel for Defendant has represented that 15 FAA promotion files were discarded in November or December of 2004, approximately eight months after the Judgment was entered in this case.  Most of the discarded materials provide background information about Plaintiff's promotion activities outside of the State of Michigan.   Counsel for Defendant represents that seven files pertaining to positions in Alaska are directly related to Counts 3 and 4 of the Amended Complaint, and would be important evidence to demonstrate Soto's carelessness in completing his written applications.  At least two of the Alaska files, AAL-FS-00-91-50326 and AAL-FS-00-075-50048, pertain to employment actions identified in the Plaintiff's pleading.  In addition, the file on a San Diego position, AWP-FS-00-FLG-48672, related to the claims in Count 2 and a file relating to a position in Houston, Texas, ASW-FS-01-053-53609, pertains to the claims in Count 10 of the Amended Complaint. Defense counsel concedes that some of the exhibits attached to the Summary Judgment Motion are from the missing files.  Nonetheless, she maintains that the loss of the entire original files would deprive the government of potentially important background information if the case were reopened.

Defense counsel also represents that two key witnesses have retired from the Federal Aviation Administration and currently reside more than 100 miles from the court. Kent Adams, the selecting official for the vacancy addressed in Count 3, currently lives in Alaska. David Hobgood, former manager of the Detroit Flight Standards Office, and a key witness for the claims in Counts 5, 6, 7, 8, and 9 of the Amended Complaint currently lives in Florida. Defendant further asserts that other witnesses have retired from the FAA. Those include Gerald Buit, a former manager of the Detroit Flight Standards Office and Jennifer Sherman, former administrative officer of the Detroit Flight Standards Office, whose testimony would be relevant to the claims in Counts 5, 8 and 9 of the Amended Complaint.

Finally, Defendant notes that Plaintiff's claims in Paragraphs 156, 157 and 163 of the Amended Complaint are replicated in Counts 1 and 3 of the Complaint in Case No. 04-70966.

Plaintiff argues that Defendant has offered no evidentiary support for the claim that the promotion files are lost. He further asserts that only three of the fifteen vacancy numbers are specifically cited in his Amended Complaint (Counts 2, 3 and 4), and that only two of the discarded files relate to the five vacancies addressed in Count 10. Plaintiff emphasizes that Defendant does not claim that all of the documents relevant to the promotion claims have been lost. He further notes that Defendant does not allege that the information in the discarded files is not available through other sources. Among the alternative sources suggested are Plaintiff's own litigation files from his previous counsel. Plaintiff offers to make those documents available to the Defendant for use in the preparation of this case.

Finally, Plaintiff argues that witnesses Hobgood and Adams retired prior to the filing of the Amended Complaint, and thus the present challenge of the March 2004 dismissal did not disadvantage the Defendant in presenting their testimony. As to the other witnesses identified by the Defendant, Plaintiff notes that each is listed as a witness in Case No. 04-70966, and that Defendant has not suggested the specific nature of the prejudice that might arise from the fact that they no longer work for the agency.

In <u>Valvoline v. Auto Care Associates, Inc.</u>, the Sixth Circuit observed that delay alone is not a sufficient basis for establishing prejudice. The court determined that the party claiming prejudice must show that the delay would "result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." 1999 WL 98590, *4 (citing <u>Davis v. Musler</u>, 713 F.2d 907, 916 (2nd Cir. 1983)). I find no cause to dispute the representations of defense counsel regarding the 15 discarded vacancy files. As they were not disposed of until approximately eight months following the entry of Judgment, and no appeal was instituted in this case, I find no fault on the part of the Defendant in disposing of the documents. In my view, the loss of official records specifically relating to claims of discrimination asserted in the Amended Complaint would prejudice the Defendant if he were required to contest those claims again. The extent of the prejudice, however, is difficult to gauge. To the extent that Defendant had the opportunity to review the documents in the first instance, and to employ such portions of them as he wished as exhibits to the Motion for Summary Judgment, the prejudice is mitigated. Unfortunately, the extent of that mitigation is also difficult to quantify. In any event, because the discarded documents do not affect all of the claims in the Amended Complaint, I would not consider the showing of prejudice sufficient to deny Rule 60(b) relief

entirely.  Should the court elect to grant Rule 60(b) relief, I recommend that the counts specifically referencing the vacancies as to which the files are lost be excluded.

Defendant's claims with respect to its witnesses are insufficient to demonstrate prejudice.  Decay of memory is a common consequence of the passage of time.  That phenomenon, however, affects both Defendants and Plaintiffs alike.  Further, I agree with Plaintiff that his challenge to the entry of Summary Judgment did nothing to impair access to the witnesses identified in this case.

### b.  Culpable Conduct of Plaintiff

As stated above, I find Plaintiff's claims that he was actively misled by Kubicki to be unpersuasive.  Plaintiff bears the burden of establishing his entitlement to relief.  Unfortunately, the items of correspondence submitted in connection with this motion specifically confirm neither Soto's accusations that Kubicki misled him nor Kubicki's claim that she kept him informed of all significant developments in his cases.  The letters proffered by government counsel, however, do indicate that Kubicki was actively engaged in Plaintiff's case throughout the period of time during which the Motion for Summary Judgment was pending.  While the "copy to" notation at the foot of each of Kubicki's letters does not definitively establish that she forwarded them to Plaintiff, such a process is consistent with the universal practice of attorneys, and I find no evidence to suggest that Kubicki would have any motivation to depart from that custom.  I find Plaintiff's selective assertions of failure to receive particular letters unpersuasive.  Soto's aggressiveness in filing administrative complaints of discrimination, together with the numerosity of Kubicki's letters and the sheer volume of discovery conducted in this case, seems fundamentally inconsistent with his sworn declaration that "it was not unusual for long periods of time to

elapse with no communication from [Kubicki]." If such periods did occur, it is difficult to understand how Kubicki might have affirmatively misrepresented anything to her client. The only showing of significant effort on Soto's part to establish contact with Kubicki occurred late in 2004 and early in 2005-long after the court had ruled on the Summary Judgment motion. If Plaintiff had acquiesced in earlier communications droughts, he may reasonably be viewed as complicit in any lapses in the prosecution of his cases. See Anderson v. Chevron Corporation, 190 F.R.D. 5, 11 (D.D.C. 1999).

### c.   Whether Plaintiff has a Meritorious Defense

The very essence of Plaintiff's Rule 60(b)(6) claim is that his former counsel failed to respond to Defendant's Motion for Summary Judgment. A basic and requisite element of a claim for relief under Rule 60(b) is a showing of a meritorious claim or defense. The cases and commentary cited at page 10 of this Report demonstrate that a showing of a meritorious claim or defense is essential to Rule 60(b) relief from a summary judgment.[6] Marshall v. Monroe and Sons, Inc., 615 F.2d 1156, 1160 (6th Cir. 1980) clearly enunciates that requirement with respect to Fed.R.Civ.P. 60(b)(1). Garth v. University of Kentucky, 966 F.2d 1452 (Table), 1992 WL 133050 (C.A. 6 (KY)) dealt with a situation very close to that presented in this case. Garth, a pro se plaintiff, failed to respond to the defendant's motion for summary judgment. Judgment was entered in favor of the defendant thirty days after the motion was filed. Garth then filed a motion to extend the time to respond to the

---

[6]  See Garth v. University of Kentucky, 966 F.2d 1452 (6th Cir. 1992) (Table), 1992 WL 133050; Teamsters, Chauffeurs, Warehousemen and Helpers Union Local 59 v. Superline Transportation Company, Inc., 953 F.2d 17 (1st Cir. 1972); Doeble v. Sprint Corp., 168 F.Supp. 2nd 1247 (D. Kan. 2001); United Overseas Bank v. Machand, 1996 WL 695902 (S.D. N.Y.) (unreported).

motion.  The district court construed her filing as a motion for relief from judgment under

Fed.R.Civ.P. 60(b) and denied it.  In affirming that denial, the Sixth Circuit Court of Appeals

declared that:

> [a] party seeking relief from judgment under Fed.R.Civ.P. 60(b) has the burden of proving that she is entitled to such relief. See, In Re: <u>Salem Mortgage Co.</u>, 791 F.2d at 459.  Garth did not meet that burden.   The district court dismissed the complaint on the grounds that Garth failed to make out a prima facie showing of discrimination.  In her motion, Garth asserted that she would not litigate the matter through pleadings, that she wanted the court to schedule a trial, and that at trial she would prove her case through interrogatories, affidavits and depositions.  <u>Her assertions are insufficient to demonstrate</u> either error, new evidence or <u>exceptional circumstances which would entitle her to relief</u>.  See Fed.R.Civ.P. 60(b)(1), (2) and <u>(6)</u>.
>
>         *                *            *
>
> To survive a motion for summary judgment, Garth was required to do more than rest on her pleadings; she was required to demonstrate that a genuine issue for trial existed.   See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986). Garth failed to respond to the motion for summary judgment in the first instance.  <u>Moreover, her supplemental motion failed to show with specificity that a genuine issue existed for trial</u>.

<u>Garth</u>, 1992 WL 133050, at *1 (emphasis added).  Soto's Motion for Relief from Judgment

similarly fails to demonstrate "with specificity that a genuine issue existed for trial."  In my

view, that failure is fatal to his Fed.R.Civ.P. 60(b)(6) claim for relief.  Absent such a

demonstration, Soto cannot establish that his former attorney was negligent in failing to

respond to Defendant's motion, or that vacating the judgment would not be an empty

exercise.

For all of the above reasons, I recommend that Plaintiff's Motion for Relief from Judgment be denied.

III.    **NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Smith v. Detroit Federation of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Donald A. Scheer
DONALD A. SCHEER
UNITED STATES MAGISTRATE JUDGE

DATED: January 30, 2008

**CERTIFICATE OF SERVICE**

 I hereby certify on January 30, 2008 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on January 30, 2008. **None.**

    s/Michael E. Lang
    Deputy Clerk to
    Magistrate Judge Donald A. Scheer
    (313) 234-5217